1

2                                        Signed and Filed: June 4, 2013

3

4

5                                        _____
                                         THOMAS E. CARLSON
6                                        U.S. Bankruptcy Judge

7

8              UNITED STATES BANKRUPTCY COURT

9         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                   SANTA ROSA DIVISION

11   In re                      )  Case No. 12-10450 TEC
                                )
12   ASA ABRAHAM ROBEY, dba     )  Chapter 7
     ACE ROBEY CONSTRUCTION, INC., )
13                              )
                                )
14              Debtor.         )
     _____)
15   CHRIS PEDRICK and JESSICA BENDY, )  Adv. Proc. No. 12-01100
                                )
16              Plaintiffs,     )
         vs.                    )
17                              )
     ASA ABRAHAM ROBEY,         )
18                              )
                Defendant.      )
19   _____)

20

21

22

23              MEMORANDUM DECISION

24       This action came to trial on March 19 and 20, 2013.  Joseph A.

25   Lepera and Natalie Ann Garcia appeared for Plaintiffs.  Michele M.

26   Poteracke appeared for Defendant.  Upon due consideration, the

27   court issues the following memorandum decision, which shall

28   constitute its findings of fact and conclusions of law.

-1-

**BACKGROUND**

In 2009, Plaintiffs purchased a single-family residence in Ross, California (the Property). Plaintiff Jessica Bendy works in marketing. Her husband, co-plaintiff Chris Pedrick, does telephone electrical work. He is a licensed contractor qualified to do electrical work, but the evidence does not indicate the extent of his familiarity with mechanics liens. The Property was the first house Plaintiffs had ever purchased.

Defendant was a licensed general contractor in 2010 and 2011.

In September 2010, Plaintiffs hired Defendant to perform a complete renovation of the Property, in which the interior of the house was to be taken down to the studs and sub-floor. The parties executed a written construction contract (the Contract), which specified a fixed price of $210,928. The fixed price was later increased to $277,613 through change orders agreed upon between the parties. Defendant commenced work on the Property in September 2010.

Defendant submitted 16 invoices (requests for progress payments) to Plaintiffs between September 15, 2010 and March 29, 2011. Plaintiffs promptly paid all the invoices submitted by Defendant through March 4, 2011. The invoices included requests for payment of sums due subcontractors and suppliers. The Contract specified that Defendant shall use the progress payments made by Plaintiffs to pay amounts due to subcontractors and suppliers within seven days after the progress payments are received. Contract, section 9.6.2.

In February 2011, Plaintiffs became aware that Defendant had failed to pay a significant amount due a subcontractor. Plaintiffs

immediately contacted Defendant and demanded that he pay all amounts currently due to suppliers and subcontractors.  When Defendant failed to bring subcontractors and suppliers current, Plaintiffs terminated the Contract for cause under section 14.2.1.3 of the Contract.

Plaintiffs completed the renovation themselves, using the services of Rob Elias, who had formerly been a licensed general contractor.

Plaintiffs paid the following amounts to subcontractors and suppliers who had not been paid by Defendant, who asserted valid mechanics liens against the Property, and who demanded payment from Plaintiffs:

| | |
|---|---|
| Central Valley Building Supply | $30,461 |
| Zapcon Plumbing | 5,228 |
| SDI Insulation | 4,503 |
| Total | $40,192 |

Plaintiffs had already paid Defendant amounts sufficient to pay the amounts due these subcontractors and suppliers.  Plaintiffs had made those payments to Defendant in response to specific requests for progress payments based on the work and materials provided by the subcontractors and suppliers listed above.

Defendant filed a Chapter 7 petition in this court on February 16, 2012, and received a received a discharge on May 22, 2012.  On May 21, 2012, Plaintiffs filed the present action, in which they seek to hold Defendant liable for damages, and to have that liability excepted from Defendant's bankruptcy discharge on the basis that it arises from a fraud perpetrated by Defendant.

-3-

Defendant contends that he owes no debt to Plaintiffs, and that Plaintiffs still owe him money under the Contract. In the alternative, Defendant contends that any amount he owes Plaintiffs should not be excepted from discharge, because he always intended to pay all subcontractors and suppliers.

**JURISDICTION**

This court has subject-matter jurisdiction over this action under 28 U.S.C. § 1334(b). Venue is proper in this district under 28 U.S.C. § 1409(a). This action is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

**DISCUSSION**

**A. Who Owes Money to Whom?**

The Contract provides that Plaintiffs may cancel the Contract for cause if Defendant fails timely to pay subcontractors and suppliers. Contract, section 14.2.1.3. Plaintiffs properly terminated the Contract for cause in March 2011, because Defendant was substantially delinquent in paying subcontractors and suppliers.

The Contract specifies that if Plaintiffs terminate the Contract for cause, the Plaintiffs remain liable for the contract price, less payments made by Plaintiffs, less Plaintiffs' cost of completing the project, and less "other damages" incurred by Plaintiffs. If the resulting number is a positive sum, Plaintiffs must pay Defendant that amount. If the resulting number is a negative sum, Defendant must pay that amount to Plaintiffs. Contract, section 14.2.4.

Thus, to determine who owes what to whom under the Contract, we must examine the contract price, the amount paid by Plaintiffs, the cost of completion, and any other damages suffered by Plaintiffs.

-4-

The contract price is $277,613, the fixed price originally specified increased by the change orders agreed upon by the parties. Defendant's assertion that the contract price is $312,338 is unpersuasive, because that amount represents a time-materials-and-profit calculation under section 5.1 of the Contract, and does not take into account the guaranteed maximum price specified in section 5.2.1 of the Contract.

The amount paid by Plaintiffs is $254,578.

The cost of completion is zero, because Plaintiffs did not produce any reliable evidence of the cost they incurred in completing the project after they terminated the Contract and replaced Defendant with a new contractor. Mr. Elias testified that he performed a substantial amount of work to complete the project and that Plaintiffs paid him for that work. But neither he nor Plaintiffs testified how much Mr. Elias was paid, nor did Plaintiffs introduce any other evidence of the cost of completion (e.g., cancelled checks or invoices from Mr. Elias).

Plaintiffs' other damages are $40,192. This is the amount that Plaintiffs were required to pay subcontractors and suppliers after they had already paid Defendant for the same items. Defendant's failure to pay the subcontractors and suppliers from the sums provided for that purpose constituted a breach of section 9.3.3, section 9.6.2, section 9.6.4, and section 9.6.6 of the Contract.

Plaintiffs contend but failed to prove that their other damages were greater than the $40,192 specified above. Plaintiffs contend that they were also injured by Defendant's failure to pay JayHawk HVAC and J.B. Johnson Painting, but this claim is unpersuasive, because the evidence indicates that those two subcontractors never

Case: 12-01100   Doc# 22   Filed: 06/04/13   Entered: 06/04/13 14:17:08   Page 5 of 11

obtained payment from Plaintiffs, and do not presently seek payment
from Plaintiffs or assert liens against the Property.  Plaintiffs
also contend that they were damaged because Defendant billed them
for a larger percentage of the total project than he actually
completed.  This claim is unpersuasive because any such over-billing
is taken into account under the formula specified in section 14.2.4
of the Contract for determining the net amount due between the
parties.  Any shortfall in the work completed by the Defendant would
increase Plaintiffs' cost of completion, which would increase the
amount due to Plaintiffs.  To the extent Plaintiffs' recovery in
this action does not fully compensate them for any over-billing, it
is because Plaintiffs did not introduce any reliable evidence of
their cost of completion.

I determine that Defendant is liable to Plaintiffs under
section 14.2.4 of the Contract in the amount of $ 17,157, calculated
as follows:

| | | |
|---|---|---:|
| Contract Price (adjusted by change orders) | | $277,613 |
| (Less) Amount paid by Plaintiffs | | (254,578) |
| (Less) Cost of completion | | (0) |
| (Less) Other damages incurred by Plaintiffs | | (40,192) |
| Amount due to Defendant | | (17,157) |

Because the resulting amount is a negative number, it represents an
amount due from Defendant to Plaintiffs.

**B. Is Defendant's Liability Non-Dischargeable?**

Plaintiffs contend that Defendant defrauded them by seeking and
obtaining progress payments from them without disclosing that he had
not used payments previously received to pay subcontractors and
suppliers.  Plaintiffs contend that the damages they suffered as a

Case: 12-01100   Doc# 22   Filed: 06/04/13   Entered: 06/04/13 14:17:08   Page 6 of 11

result of this conduct should be excepted from discharge under section 523(a)(2)(A) of the Bankruptcy Code.

To obtain a determination that Defendant's liability to them is excepted from discharge under section 523(a)(2)(A), Plaintiffs must establish the following elements by a preponderance of the evidence: (1) that Defendant made a representation of fact that was false in some material respect; (2) that Defendant knew the representation to be false; (3) that Defendant made the representation for the purpose of deceiving Plaintiffs; (4) that Plaintiffs justifiably relied upon the representation; and (5) that Plaintiffs suffered damages as a result of the falsity of the representation. Ghomeshi v. Sabban (In re Sabban),600 F.3d 1219, 1222 (9th Cir. 2010); Citibank v. Eashai (In re Eashai), 87 F.3d 1082, 1086 (9th Cir. 1996).

Representation of fact. Each time Defendant sought a progress payment from Plaintiffs, he implicitly represented that he had used the funds previously obtained from Plaintiffs to remain at least reasonably current in paying subcontractors and suppliers. When a fact is sufficiently important, failure to disclose that fact constitutes a misrepresentation regarding that fact. Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1246 n.4 (9th Cir. 2001); Eashai, 87 F.3d at 1089. In the present case, Defendant was obligated to disclose whether he was reasonably current in paying subcontractors and suppliers for the following reasons.

(1) The Contract provides in relevant part:

§ 9.6.2 The Contractor shall pay each Subcontractor no later than seven days after receipt of payment from the Owner the amount to which Subcontractor is entitled. . .

§ 9.6.4 Contractor payments to material and equipment suppliers shall be treated in a manner similar to that provided in Sections 9.6.2 . . .

Case: 12-01100   Doc# 22   Filed: 06/04/13   Entered: 06/04/13 14:17:08   Page 7 of 11

§ 9.6.6 ... payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials . . .

§ 9.3.3 The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. *The Contractor further warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work.* (emphasis added)

(2) Plaintiffs previously paid Defendant for the work and materials provided by the subcontractors and suppliers that Defendant failed to pay.

(3) It is extremely important to a homeowner that funds provided to the contractor for the purpose of paying subcontractors and suppliers be used by the contractor for that purpose, because the homeowner may otherwise be required to pay for the same work and/or materials twice.

See Custer v. Dobbs (In re Dobbs), 115 B.R. 258, 266 (Bankr. D. Idaho 1990) (contractor implicitly represented that he had used funds previously provided to pay subcontractors and suppliers "in a substantially simultaneous fashion").

Falsity. On and after January 5, 2011, Defendant requested progress payments without disclosing that he was not reasonably current in paying subcontractors and suppliers. This implied representation that he was current in paying subcontractors and suppliers was false, because as of that date, Defendant had owed Central Valley Building Supply $24,853 for more than 60 days, and

-8-

had owed JayHawk HVAC $5,500 for 45 days. Such a delinquency was wholly inconsistent with Defendant's contractual representation that he would pay subcontractors and suppliers within seven days.

_Knowledge of falsity and intent to deceive_. Defendant knew he was not substantially current in paying subcontractors and suppliers when he requested progress payments from Plaintiffs on and after January 5, 2011. The amounts due were too substantial for Defendant not to be aware of them. The following facts and circumstances indicate that Defendant intended to deceive Plaintiffs in requesting progress payments without disclosing that he was not substantially current in paying subcontractors and suppliers: he understood the potential harm that could befall Plaintiffs from this situation; he knew Plaintiffs could terminate the Contract if they knew the facts; and keeping the facts from Plaintiffs minimized the risk that Plaintiffs would terminate the Contract.

_Reliance_. Plaintiffs relied on Defendant's representation that he was reasonably current in paying subcontractors and suppliers when Plaintiffs made progress payments to Defendant totaling $57,412 on and after January 5, 2011. That reliance was justified for the following reasons.

(1) Plaintiffs received no notice before mid-February 2011 that Defendant was behind in paying any subcontractors or suppliers.

(2) Plaintiffs had no prior experience with construction contracts involving real property and mechanics liens. The Property was their first home.

(3) When they first learned that Defendant was behind in paying a subcontractor, Plaintiffs promptly demanded that Defendant

1   bring the account current, and terminated the Contract when
2   Defendant did not do so.

3       <u>Damages resulting from fraud</u>.  Plaintiffs sustained damages in
4   the amount of $40,192 as a result of the false pretenses described
5   above.  This is the amount Plaintiffs were required to pay Central
6   Valley Building Supply, Zapcon Plumbing, and SDI Insulation after
7   they had already paid Defendant for the same work and materials.

8   **C. Amount of Non-Dischargeable Debt**

9       Defendant asserted the credits he was entitled to under the
10  section 14.2.4 of the Contract as a defense to the claim for damages
11  asserted by Plaintiffs.  Defendant is entitled to do so under the
12  common law doctrine of recoupment, because the offsetting
13  obligations arose from the same transaction – the renovation of the
14  Property under the Contract.  Section 14.2.4 of the Contract
15  replicates the parties' common law recoupment rights.

16      The debt that is non-dischargeable under bankruptcy law can be
17  no larger than the debt that Defendant owes Plaintiffs under
18  non-bankruptcy law.  Thus, I conclude that Defendant's
19  non-dischargeable debt to Plaintiffs is the smallest of the
20  following three amounts: the progress payments that Defendant
21  obtained from Plaintiffs through false pretenses ($57,412); the
22  damage sustained by Plaintiffs as a result of Defendant's failure to
23  pay subcontractors and suppliers from funds provided for that
24  purpose by Plaintiffs ($40,192); and the net amount due from
25  Defendant to Plaintiffs after taking into account Defendant's
26  recoupment rights under the Contract ($17,157).

27      The court declines to award punitive damages, in part because
28  Plaintiffs have offered no evidence of Defendant's ability to pay

-10-

damages. <u>Green v. Laibco, LLC</u>, 192 Cal. App. 4th 441, 452 (2011).

The Contract contains no attorneys fees clause, and Plaintiffs have identified no other basis for an award of fees.

**CONCLUSION**

Defendant is liable to Plaintiffs in the amount of $17,157, and such liability is excepted from discharge under section 523(a)(2)(A) of the Bankruptcy Code.

**\*\*END\*\***